UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 28, 2014
```

ROBERT LEDERMAN,

                              Plaintiff,

         - against -

ADRIAN BENEPE (in his Individual and
Official Capacity as the Commissioner of the
New York City Department of Parks and
Recreation); SARAH HENRY (in her
Individual and Official Capacity); MUSEUM
OF THE CITY OF NEW YORK; and CITY
OF NEW YORK,

                              Defendants.

**MEMORANDUM
OPINION & ORDER**

12 Civ. 6028 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Robert Lederman brings this Section 1983 action against the City of New

York and former New York City Parks and Recreation Commissioner Adrian Benepe (together,

the "City Defendants"), and Dr. Sarah Henry and the Museum of the City of New York, Inc.

("MCNY," and together with Dr. Henry, the "Museum Defendants").  Lederman alleges that

Defendants violated his First, Fourth, and Fourteenth Amendment rights by threatening and

causing his arrest during an August 9, 2011 MCNY panel discussion.  Lederman also asserts that

Defendants' actions constitute retaliation for his protest activities and past political activism.

        All defendants have moved to dismiss the Amended Complaint for failure to state

a claim.  The Museum Defendants have also moved to dismiss for insufficient service of process.

For the reasons stated below, the motions will be granted in part, and denied in part.

# BACKGROUND

## I.  FACTS

For purposes of deciding Defendants' motions to dismiss, the Court assumes the following factual allegations in the Amended Complaint to be true.  Plaintiff is a visual artist and well-known political activist, and is the president and founder of A.R.T.I.S.T. (Artists' Resistance to Illegal State Tactics).  (Amended Complaint ("Am. Cmplt.") ¶ 8)  Plaintiff has previously filed lawsuits challenging government regulations on First Amendment grounds, including a suit against, inter alia, the City and Benepe.[1]  (Id. at ¶¶ 1, 8)  In connection with his protest activities, Plaintiff has been arrested forty-four times.  (Id. ¶ 8)

On August 9, 2011, Plaintiff attended a panel discussion at the MCNY entitled "Whose Park Is It? Financing and Administering New York's New Parks."  (Id. ¶ 13)  Benepe, who was Parks Commissioner at the time, appeared as a panelist.  (Id. ¶ 11)  The MCNY is a private, non-profit organization that operates on City property and receives funding from the City.  (Id. ¶ 11)  Plaintiff purchased a ticket for the event that entitled him to admission and a reserved seat.  (Id. ¶ 15)

Soon after the panel discussion began, Plaintiff stood up, displayed a sign, and stated that he was making a "public service announcement."  (Id. ¶ 16)  Plaintiff's sign read: "Park privatization is a real estate scam.  It's all about raising property values for the Mayor's

---

[1]  The Amended Complaint recounts Plaintiff's involvement in the following lawsuits: Bery v. City of New York, 97 F.3d 689, 697 (2d Cir. 1996) (holding, inter alia, that a City licensing regime violated street artists' First Amendment rights); Lederman v. United States, 89 F. Supp. 2d 29, 42 (D.D.C. 2000) (finding First Amendment violation where regulation created a no-demonstration zone around the United States Capitol); and Lederman et al. v. New York City Dep't of Parks and Recreation, 10 Civ. 4800 (RJS) (challenging City regulation restricting locations where street vendors may sell their wares).  Lederman's action against the Parks Department was dismissed in a 2012 decision by Judge Sullivan, which the Second Circuit affirmed in 2013.  Lederman v. New York City Dep't of Parks & Recreation, 901 F. Supp. 2d 464, 481 (S.D.N.Y. 2012), aff'd, 731 F.3d 199 (2d Cir. 2013).

wealthiest friends." (Id. ¶ 16 n.4)  While displaying his sign, Plaintiff interrupted the panel discussion to tell "the audience that Benepe had long prosecuted street artists[,]" that he was "lying," and that Benepe was a "criminal who steals our park land to sell to the highest bidder." (Id. ¶ 17)

Several of those present stood up to confront Plaintiff, including other audience members and an MCNY security guard and "administrator," who asked Plaintiff to put down his sign. (Id. ¶¶ 20, 27, 28)  Other audience members holding signs had not been asked to put down their signs. (Id. ¶ 28)  A New York City Police Department ("NYPD") officer who was called to the scene invited Plaintiff to leave, but Plaintiff declined. (Id. ¶ 21)  Plaintiff was permitted to remain and to display his sign, so long as he did so quietly and to the side of the stage. (Id. ¶ 22)  Plaintiff continued to interrupt the event, however, by making "comments" in response to Benepe's remarks. (Id.)

Approximately thirty minutes later, during a question and answer session, Plaintiff again interrupted the program by interjecting his own "comment[]" while an audience member was attempting to ask a question about Brooklyn Bridge Park. (Id. ¶ 23)  Benepe told Plaintiff to "shut up," and asked Plaintiff whether he wanted to be arrested.  Plaintiff replied, "You've done it many times before." (Id. ¶¶ 23-24)  About five minutes later, police returned to the scene and took Plaintiff into custody. (Id. ¶ 24)  As he was being taken away, Plaintiff yelled, "Arrest Adrian Benepe!" and "Bloomberg Sucks!" (Id. ¶ 29)  No other audience members – including individuals who allegedly "physically accosted" Plaintiff – were arrested. (Id. ¶¶ 27, 60)

The police charged Plaintiff with trespassing and disorderly conduct. (Id. ¶ 26)  According to Plaintiff, the "accusing instrument" demonstrates that Defendant Henry, a museum

supervisor, made several false statements to police, including that (1) she "observed the

defendant scream and yell in sum and substance: Bloomberg is a Liar, Bloomberg Sucks, Fuck

Bloomberg;" (2) Plaintiff was not authorized to be at the event, (3) Henry had asked Plaintiff to

leave and he refused; and (4) Plaintiff did not have permission or authority to remain at the

MCNY. (Id. ¶ 29)   On November 3, 2011, the charges against Plaintiff were dismissed on

speedy trial grounds. (Anthony M. Disenso Declaration ("Disenso Decl."), Ex. C ("Certificate of

Disposition"); Lambrina Mathews Declaration ("Mathews Decl."), Ex. A ("People v. Lederman,

Criminal Case File")

## II.    PLAINTIFF'S CLAIMS

Plaintiff accuses Defendants of acting under color of state law to deprive him of

his constitutional rights. The Amended Complaint asserts seven causes of action:  (1) a First

Amendment retaliation claim against Benepe for "threaten[ing] to have Plaintiff" arrested; (2) a

First Amendment retaliation claim against the City for engaging in a practice, policy and custom

of "harassing artists and others engaged in First Amendment activity" and "targeting Plaintiff . . .

as the outspoken leader of their group"; (3) a First Amendment retaliation claim against Dr.

Henry for "endorsing Benepe's threat to have [Plaintiff] arrested" and for providing "false

statements" to police; (4) a Fourth Amendment claim for false arrest against Benepe, the City,

and the Museum Defendants; (5) a Fourteenth Amendment Equal Protection claim against the

City Defendants; (6) a state law false arrest claim against Dr. Henry; and (7) a "respondeat

superior" claim against the MCNY. (Am. Cmplt. ¶¶ 48-81)

## DISCUSSION

I.   **THE MUSEUM DEFENDANTS' MOTION
     TO DISMISS FOR IMPROPER SERVICE**

   The Museum Defendants have moved to dismiss this action for improper service

under Fed. R. Civ. P. 12(b)(5).  This issue must be addressed before considering the Museum

Defendants' motion to dismiss for failure to state a claim.  See Mende v. Milestone Tech., Inc.,

269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) ("Before addressing Defendants' Rule 12(b)(6)

motion to dismiss, the Court must first address the preliminary questions of service and personal

jurisdiction.") (citing Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)

("[L]ogic compel[s] initial consideration of the issue of jurisdiction over the defendant – a court

without such jurisdiction lacks power to dismiss a complaint for failure to state a claim.").

   A.   **Legal Standard**

   Under Fed. R. Civ. P. 4(c)(1), a "plaintiff is responsible for having the summons

and complaint served within the time allowed by Rule 4(m)," which is no later than 120 days

after the filing of the Complaint.  Rule 4(m) provides, in pertinent part:

> If a defendant is not served within 120 days after the complaint is filed, the court
> – on motion or on its own after notice to the plaintiff – must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time.  But if the plaintiff shows good cause for the failure, the court
> must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

   Fed. R. Civ. P. 4(e) provides that an individual may be served by

(1) following state law for serving a summons in an action brought in courts of general
jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Under New York law, personal service on an individual may be accomplished by "delivering the summons within the state to the person to be served," or "by delivering the summons within the state to a person of suitable age and discretion at the . . . usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the [person's] actual place of business . . . ." N.Y. C.P.L .R. § 308(1)-(2).

Under New York law, personal service on a not-for-profit corporation such as the Museum[2] is governed by N.Y. C.P.L.R. § 311, which provides that service must be made on "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1).

"'[I]n considering a motion to dismiss pursuant to [Rule] 12(b)(5) for insufficiency [of service] of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction.'" Koulkina v. City of New York, 559 F. Supp. 2d 300, 311 (S.D.N.Y. 2008) (quoting Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002)). "When a defendant raises a Rule 12(b)(5) 'challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy.'" Id. (quoting Mende, 269 F. Supp. 2d at 251). "Conclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served with

---

[2] See MCNY Local Rule 7.1 disclosure statement (Dkt. No. 4).

process." Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 658 (S.D.N.Y.1997),

aff'd, 173 F.3d 844 (2d Cir. 1999).  A plaintiff must instead, "through specific factual allegations

and any supporting materials, make a prima facie showing that service was proper." Kwon v.

Yun, No. 05–CV–1142, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006).

      "If service of process [is] not sufficient, the Court has discretion to dismiss the

action, but dismissal is not mandatory." Darden, 191 F. Supp. 2d at 387.  "For example, courts

may grant a defendant's motion to dismiss pursuant to Rule 12(b)(5) and may simultaneously

grant a plaintiff leave to properly serve that defendant." Stone v. Ranbaxy Pharm., Inc., JFM-10-

CV-08816, 2011 WL 2462654, at *6 (S.D.N.Y. June 16, 2011).

      A court may also extend a plaintiff's time for service upon a showing of good

cause. Fed. R. Civ. P. 4(m).  "[A] mistaken belief that service was proper does not constitute

good cause." Jonas v. Citibank, N.A., 414 F. Supp. 2d 411, 416 (S.D.N.Y. 2006).  Similarly,

"[a]n attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good

cause." Howard, 977 F. Supp. at 658 (citing McGregor v. United States, 933 F.2d 156, 160 (2d

Cir. 1991)).

      "Even in the absence of good cause, however, the court has discretion to extend

the time for service of the complaint." Songhorian v. Lee, 11 CIV. 36 CM, 2012 WL 6043283,

at *4 (S.D.N.Y. Dec. 3, 2012) (citing Zapata v. City of New York, 502 F.3d 192, 193 (2d Cir.

2007) ("We join several other circuits and hold that district courts may exercise their discretion

to grant extensions under Rule 4(m) absent a showing of good cause.")).  "When deciding

whether to exercise discretion and extend the time for service of process, courts consider: '(1)

whether the applicable statute of limitations would bar [a] refiled action; (2) whether the

defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant

had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.'" Id. (quoting Eastern Refractories Co., Inc. v. Forty Eight Insulations, Inc., 187 F.R.D. 503, 506 (S.D.N.Y. 1999)).

        In determining whether the Museum Defendants have been properly served, this Court has looked to materials outside the pleadings, including (1) affidavits from Dr. Henry and museum employees Susan Henshaw Jones and Colleen Blackler (Dkt. Nos. 26-28); (2) affidavits and a declaration from process servers concerning service of the Complaint and Amended Complaint on the Museum Defendants (Affidavit of Roschaad-Jamal Milner ("Milner Aff.") (Dkt. No. 8); Affidavit of Laquesia Ivory ("Ivory Aff.") (Dkt. No. 21-4); Declaration of Roschaad-Jamal Milner ("Milner Decl.") (Dkt. No. 21-5)); and (3) mail receipts (Dkt. No. 21-2).

### B.    Analysis

#### 1.    Service of the Initial Complaint on the Museum Defendants

        The Museum Defendants argue that they were never properly served with the initial complaint. Plaintiff has provided a confusing and shifting account of how service was allegedly made on these defendants.

        Plaintiff's process server – Roschaad-Jamal Milner – submitted an affidavit stating that he served "Sarah David" and the MCNY on November 29, 2012, by leaving "one summons and one verified complaint each" with a secretary at the Museum.[3] (Milner Aff. (Dkt. No. 8) at ¶¶ 2-3) After the Museum Defendants submitted a pre-motion letter to the Court asserting that only one copy of these documents had been left at the MCNY – and that that copy

---

[3] According to Milner, Sarah David is Dr. Henry's secretary. (Milner Decl. (Dkt. No. 21-5) ¶ 3) Dr. Henry, however, attests that she does not have a secretary and was handed the papers by "Sarah Greenbaum," who is a MCNY receptionist. (Henry Aff. (Dkt. No. 27) ¶ 2)

was left with an MCNY security guard and not with a secretary (see Museum Def. Jan. 11, 2013

Ltr.) – Plaintiff's counsel offered a different account.  In January 13, 2013 letter, Plaintiff's

counsel stated that "[t]he process server attests that the security guard at the museum refused to

allow him to personally deliver copies of the service to Ms. Henry, but promised to give the

process to her personally." (Pltf. Jan. 13, 2013 Ltr. at 2)  Plaintiff now proffers a third version of

events.  In a July 5, 2013 declaration, Plaintiff's process server – Mr. Milner – no longer claims

that he gave the papers to a secretary or spoke with a security guard.  Instead, Milner claims that

a "young Caucasian lady at the front desk" informed him that he could not see Dr. Henry without

an appointment, but that she would give the "important business documents" to Dr. Henry's

secretary – "Sarah David" – and that Ms. David would then give the papers to Dr. Henry.

(Milner Decl. (Dkt. No. 21-5) ¶¶ 2-3)  The Court need not decide whether any of these accounts

are true, because service would not be appropriate – as to either Dr. Henry or the Museum –

under any of these scenarios.

   In New York, it is well-settled that delivery of process "outside the presence of

the person to be served does not conform with the requirements of [N.Y. C.P.L.R. § 308(1)] with

respect to personal service."  Hoffman v. Petrizzi, 144 A.D.2d 437, 438 (2d Dep't 1988)

(quoting Selby v. Jewish Mem. Hosp., 130 A.D.2d 651, 652 (2d Dep't 1987); see also Macchia

v. Russo, 67 N.Y.2d 592, 593 (1986) (noting that the Court of Appeals has "refused to recognize

delivery of process to another person as constituting personal delivery to defendant").

Accordingly, personal service of the initial complaint was not made on Dr. Henry.

   Plaintiff attempts to avoid this result by arguing that Dr. Henry resisted service.

(Pltf. Opp. Br. (Dkt. No. 22) at 18)  Under New York law, "delivery of a summons may be

accomplished by leaving it in the 'general vicinity' of a person to be served" if that person

9

"'resists' service.'" Spector v. Berman, 119 A.D.2d 565, 566 (2d Dep't 1986). This exception to the rule is not applicable here, however. Even where a party actively resists service, "a process server . . . must bring 'the questioned process within the purview of the person to be served,' since '[t]he defendant must be made aware that he or she is in fact being served with process.'" Davis v. Musler, 713 F.2d 907, 914 (2d Cir. 1983) (internal citation omitted) (quoting Haak v. Town of Wheatland, 86 A.D.2d 961, 962 (4th Dep't 1982)). There is no evidence here that Dr. Henry was aware that the process server was attempting to effect service on her, much less that she was actively resisting service.[4]

Even accepting Plaintiff's most recent account of the attempt to effect service, a third party's refusal to permit a process server to access a defendant's office does not demonstrate that a defendant was "resisting service." See, e.g., TAGC Mgmt., LLC v. Lehman, 842 F. Supp. 2d 575, 580 (S.D.N.Y. 2012) (service deficient when delivered to security guard in office lobby even though security guard had "refused to allow the process server access to [defendant's office suite]"); Ingenito v. Riri USA, Inc., No. 11 CV 2569(CBA), 2011 WL 4056078, at *4 (S.D.N.Y. Aug. 9, 2011) (service deficient even though process server had been denied access to defendant's office by security guard).

Plaintiff also failed to properly serve the initial complaint on the MCNY. Plaintiff's argument that the Museum was properly served is premised on the notion that Dr.

---

[4] The cases cited by Plaintiff (Pltf. Opp. Br. (Dkt. No. 22) at 18) are thus not on point. See Spector, 119 A.D.2d 565 (2d Dep't 1986) (process server left documents in defendant's mailbox after defendant answered intercom but refused to meet process server at building's entrance); Bossuk v. Steinberg, 58 N.Y.2d 916, 918 (1983) ("[I]f the person to be served interposes a door between himself and the process server, the latter may leave the summons outside the door, provided the person to be served is made aware that he is doing so.") (internal citations omitted). McDonald v. Ames Supply Co., 22 N.Y.2d 111 (1968) is irrelevant; that case was superseded by statute. See Macchia v. Russo, 67 N.Y.2d 592, 593 (1998) (citing N.Y. C.P.L.R. § 308(2)).

Henry, a corporate officer of the museum, was properly served. (Pltf. Opp. Br. (Dkt. No. 22) at 19) As explained above, Dr. Henry was not properly served.[5]

Finally, both Dr. Henry and the MCNY have submitted affidavits demonstrating that they have never authorized anyone to accept service on their behalf. (Affidavit of Dr. Sarah Henry ("Henry Aff.") (Dkt. No. 27) ¶ 4; Affidavit of Susan Henshaw Jones ("Jones Aff.") ¶ 2 (Dkt. No. 26)) By his own admission, plaintiff's initiating process server never inquired whether the receptionist was authorized to accept service on behalf of Dr. Henry or the MCNY. (Milner Decl. (Dkt. No. 21-5) Accordingly, this Court concludes that Plaintiff did not effect service of the initial complaint on the Museum Defendants.

**2.      Service of the Amended Complaint
        on the Museum Defendants**

Plaintiff has submitted an affidavit from another process server – Laquesia Ivory – in which Ms. Ivory claims that she delivered two copies of the Amended Complaint to an MCNY employee named Colleen Blackler, who represented that she was authorized to accept service on behalf of both Dr. Henry and the MCNY. (Ivory Aff. (Dkt. No. 21-4) ¶¶ 7-9) The Museum Defendants deny that Ms. Blackler – an executive assistant – was authorized to accept service for Dr. Henry or the Museum, and also deny that Ms. Blackler told Ms. Ivory that she was authorized to accept service. See Affidavit of Colleen Blackler ("Blackler Aff.") (Dkt. No. 28) ¶ 5; Museum Def. Br. (Dkt. No. 24) at 23).

---

[5] Plaintiff's reliance on Fashion Page, Ltd. v. Zurich Ins. Co., 50 N.Y.2d 265, 268-273 (1980) is similarly misplaced. The process server in Fashion Page served an individual who was authorized to accept service and who had done so regularly on the defendant corporation's behalf for five years. Here, by contrast, Milner never asked the receptionist whether she was authorized to accept service of process on behalf of Dr. Henry or the MCNY. Compare Fashion Page, 50 N.Y.2d at 269 (noting that "defendant's receptionist and the secretary herself" identified the secretary "as a person authorized to accept service for the corporation) with Milner Decl. (Dkt. No. 21-5) (stating that Plaintiff's process server "asked to see Sarah Henry to deliver some important business documents").

Ordinarily, a hearing would be necessary to resolve the factual dispute. Here, however, it is undisputed that Plaintiff's process server did not give Ms. Blackler copies of the summons when she handed her copies of the Amended Complaint. See Ivory Aff. (Dkt. No. 21-4) ¶¶ 7, 9; Blackler Aff. (Dkt. No. 28) ¶¶ 7, 9. "Service of process in the federal system requires service of a summons, in the manner prescribed in Rule 4, together with a copy of the complaint." OS Recovery, Inc. v. One Groupe Int'l, Inc., 02 CIV 8993(LAK), 2005 WL 1744986, at *1 (S.D.N.Y. July 26, 2005).

Because Plaintiff did not properly serve the summons and original complaint on the Museum Defendants, and because Plaintiff concededly did not serve the summons associated with the Amended Complaint on the Museum Defendants, proper service has not been effected on the Museum Defendants. See, e.g., LeBrew v. Reich, 03-CV-1832 (JG)(KAM), 2006 WL 1662595, at *6 (E.D.N.Y. May 12, 2006) (dismissing third-party complaint where plaintiff failed to include summons with copy of complaint mailed to defendant); OS Recovery, Inc., 2005 WL 1744 986, at * 1 (denying default judgment against defendants who were not served with summons); see also Martin v. New York State Dep't of Mental Hygiene, 588 F.2d 371, 373 (2d Cir. 1978) (noting that "Rule 4 mandates that the defendant be served with the summons and complaint personally, or in accordance with one of several prescribed alternatives" and that "[a] showing that the defendant has had actual notice of the lawsuit is not sufficient"). Accordingly, this Court lacks personal jurisdiction over the Museum Defendants and must either dismiss the Amended Complaint as to them or extend the period for service. See Omni Capital Int'l, Ltd. v. Rudolf Wolf & Co., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

3.   **Extension of Time to Effect Service**

As discussed above, under the circumstances here, this Court has discretion to grant Plaintiff additional time to effect service.  In deciding whether an extension of time should be granted, courts consider:  "(1) whether the applicable statute of limitations would bar [a] refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision."  Eastern Refractories Co., 187 F.R.D. at 506.

Here, the relevant considerations weigh in Plaintiff's favor.  Defendants acknowledge receiving copies of the Amended Complaint, and thus they had actual notice of the claims contained therein.  Defendants do not claim that they would be unfairly prejudiced by an extension. See Jordan v. Forfeiture Support Associates, 928 F. Supp. 2d 588, 599 (E.D.N.Y. 2013) ("Although defendant 'will be burdened with the obligation to defend this lawsuit if the extension is granted, . . . that does not rise to the level of prejudice necessary to tip the balance of this factor in [defendant's] favor.'" (quoting Lumbermens Mut. Cas. Co. v. Dinow, No. 06–CV–3881, 2009 WL 2424198, at *4 (E.D.N.Y. Aug. 6, 2009)).  Although the Museum Defendants did not conceal the defect in service, and even though Plaintiff has not argued that his claims would be time-barred if his claims were dismissed, given the lack of prejudice to the Museum Defendants and their actual notice of the pending action, this Court concludes that an extension is warranted.  Accordingly, Plaintiff will be granted thirty days from the date of this order to effect service on the Museum Defendants.  The Museum Defendant's motion to dismiss pursuant to Rule 12(b)(5) is therefore denied, with leave to renew if service is not effected in thirty days.

13

## II.   DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

All Defendants have moved to dismiss the Amended Complaint pursuant to Fed.

R. Civ. P. 12(b)(6).  Because, at present, this Court lacks personal jurisdiction over the Museum

Defendants, only the City Defendants' Rule 12(b)(6) motion will be considered.

### A.   Legal Standard

A Rule 12(b)(6) motion is directed to a complaint's legal sufficiency.  "To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To meet this standard, a

complaint's factual allegations must permit the Court, "draw[ing] on its judicial experience and

common sense," "to infer more than the mere possibility of misconduct."  Id. at 679.  "In

considering a motion to dismiss . . . the court is to accept as true all facts alleged in the

complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)),

and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v.

Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of

'further factual enhancement,'"  Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly,

550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair

notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp. v.

Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. 544).

**B.** <u>Documents Considered on a Motion to Dismiss</u>

In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with [a regulatory authority such as the SEC], and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." <u>In re Merrill Lynch & Co., Inc.</u>, 273 F. Supp. 2d 351, 356–57 (S.D.N.Y. 2003) (internal citations omitted). "When matters . . . that do not fall into these limited categories are [submitted in connection with] a Rule 12(b)(6) motion, 'a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material.'" <u>Peterec v. Hilliard</u>, 12-CV-3944 CS, 2013 WL 5178328, at *2 (S.D.N.Y. Sept. 16, 2013) (quoting <u>Friedl v. City of N.Y.</u>, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted)).

In their motion to dismiss papers, the City Defendants rely heavily two video recordings of the August 9, 2011 panel discussion that the Plaintiff apparently posted to his YouTube account. (City Def. Br. (Dkt. No. 19) at 6; <u>see</u> Disenso Decl., Ex. B (Dkt. No. 18)) The Amended Complaint does not reference the videos, and there is nothing in the record demonstrating that Plaintiff relied on the videos in filing this lawsuit. Plaintiff's possession of the videos does not establish reliance. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the

Case 1:12-cv-06028-PGG-DCF    Document 36    Filed 03/28/14    Page 16 of 27

complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (emphasis in original).  Moreover, it is obvious from a review of the videos that they portray only part of what happened at the August 9, 2011 event.  Under these circumstances, this Court concludes that it would not be appropriate to consider the videos on a motion to dismiss.[6]

Accordingly, for purposes of this motion, this Court will not consider the videos submitted by the City Defendants.  This Court will consider the certificate of disposition submitted by the City Defendants regarding Plaintiff's arrest (see Disenso Decl., Ex. C (Dkt. No. 18), because "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including arrest reports, criminal complaints, indictments and criminal disposition data."  Wims v. New York City Police Dep't., 10 CIV. 6128 PKC, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) (internal quotation marks and citations omitted).

Plaintiff has attempted to "supplement the factual record" with his own fifty-seven paragraph declaration.  See Robert Lederman Declaration (Dkt. No. 21-6).  This document may not be considered on a motion to dismiss and it will play no role in the Court's analysis.[7]

---

[6]  In urging this Court to consider the videos, the City Defendants cite Lu v. City of New York et al., No. 12 Civ. 2198 (JAN), slip op. (Dkt. No. 24) at 2 (S.D.N.Y. Feb. 19, 2013).  Lu is not helpful here, because the complaint in that case incorporated the video at issue by reference. (Id.)

The City Defendants also note that Plaintiff's counsel has stated that she has "no objection whatsoever" to this Court considering the videos in connection with the motion to dismiss.  (City Def. Br. (Dkt. No. 19) at 6) (citing May 6, 2013 Transcript (Dkt. No. 11) at 8).  Plaintiff's counsel's consent to this approach does not demonstrate that it is appropriate under the law for this Court to consider the videos on a motion to dismiss.

[7]  See, e.g., Matson v. Bd. of Educ. of City Sch. Dist. of New York, 631 F.3d 57, 69 (2d Cir. 2011) (approving district court's rejection of plaintiff's affidavit and noting that "'Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion:  the court may exclude the additional material and decide the motion on the

C.    <u>Analysis</u>

1.    **Plaintiff States a First Amendment**
      **<u>Retaliation Claim Against the City Defendants</u>**

The Amended Complaint alleges that Benepe retaliated against Plaintiff for

"express[ing] an opposing viewpoint on a matter of public concern" by "threaten[ing] to have

him arrested." (Am. Cmplt. ¶¶ 35-38)

A private citizen alleging a First Amendment retaliation claim against a public

official must show that "(1) he has an interest protected by the First Amendment; (2) defendant's

actions were motivated or substantially caused by his exercise of that right; and (3) defendant's

actions effectively chilled the exercise of his First Amendment right." <u>Curley v. Vill. of Suffern</u>,

268 F.3d 65, 73 (2d Cir. 2001). "On a motion to dismiss, the court 'must be satisfied that such a

claim is supported by specific and detailed factual allegations, which are not stated in wholly

conclusory terms.'" <u>Rankel v. Town of Somers</u>, 11-CV-6617 (CS), 2014 WL 715702, at * 8

(S.D.N.Y. Feb. 25, 2014) (quoting <u>Velez v. Levy</u>, 401 F.3d 75, 97 (2d Cir. 2005) (internal

quotation marks omitted)).

The City Defendants argue that Plaintiff's claim fails because (1) Plaintiff had no

protected First Amendment interest, given that the police had probable cause to arrest him; and

(2) Defendants' actions did not actually chill Plaintiff's speech. (City Def. Br. (Dkt. No. 19) at

10-11)

_____

complaint alone or it may convert the motion to one for summary judgment'") (quoting <u>Kopec v.</u>
<u>Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir. 1991)).

The Amended Complaint pleads facts demonstrating that Plaintiff was attending a "public lecture" and that he was engaged in expressive political speech.[8]  (Am. Cmplt. ¶¶ 13, 16-17, 22-24, 35, 43, 49, 77)  "[T]he First Amendment protects political demonstrations and protests – activities at the heart of what the Bill of Rights was designed to safeguard." Jones v. Parmley, 465 F.3d 46, 56 (2d Cir. 2006).

Where there is probable cause to believe that a plaintiff has committed a crime, however, the case law indicates that First Amendment interests must yield, and that an inquiry into the motive for making an arrest is not necessary.  See, e.g., Curley v. Suffern, 268 F.3d at 73 ("As to the second element, because defendants had probable cause to arrest plaintiff, an inquiry into the underlying motive for the arrest need not be undertaken ."); see also Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir. 1992) ("[B]ecause there was probable cause in this case to believe that [plaintiff] violated the harassment statute, we will not examine the defendants' motives in reporting [plaintiff's] action to the police for prosecution.").

Plaintiff's First Amendment retaliation claim against the City Defendants is not based on his alleged false arrest, however, but rather on Benepe's alleged threat to have Plaintiff

---

[8]  The government, of course, may impose valid time, place, and manner restrictions on speech and other expressive activity.  "A major criterion" for those restrictions, however, is that they "'not be based upon either the content or subject matter of speech.'" Heffron v. Int'l Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 648 (1981) (quoting Consolidated Edison Co. v. Public Service Comm'n, 447 U.S. 530, 536 (1980)).  Even when government officials are permitted to exclude speakers from certain fora entirely, their actions remain subject "to the requirements of reasonableness and viewpoint neutrality." Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 546 (2d Cir. 2002) (citing Cornelius v. NAACP Legal Defense & Educational Fund, Inc., 473 U.S. 788, 800 (1985)).  The proper level of scrutiny for government action depends on the forum at issue.  The forum issue often involves a "a fact intensive analysis" that is not well-suited to a motion to dismiss. Wandering Dago Inc. v. New York State Office of Gen. Servs., 1:13-CV-1053 MAD/RFT, 2014 WL 201968, at *1, *9-*19 (N.D.N.Y. Jan. 15, 2014) (citing Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 343 (2d Cir. 2010) (expressing concern about district court's forum analysis in light of "sparse" factual record).

arrested.  See, e.g., Am. Cmplt. ¶¶ 37, 50, 52.  This Court will not dismiss Plaintiff's First

Amendment retaliation claim at this stage of the proceedings on the grounds that at some point

after Benepe's threat, Dr. Henry provided the NYPD with information – which Plaintiff alleges

to be false – that gave police officers probable cause to arrest Plaintiff.

   The City Defendants also argue that Benepe's alleged threat "failed to chill

[P]laintiff's expression."  (City Def. Br. (Dkt. No. 19) at 11)  "The Second Circuit has held that

where a party can show no change in his behavior, he has quite plainly shown no chilling of First

Amendment right to free speech."  Persaud v. McSorley, 275 F. Supp. 2d 490, 495 (S.D.N.Y.

2003) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995); Spear v. Town of

W. Hartford, 954 F.2d 63, 67 (2d Cir.1992)).  If Benepe's alleged threat had no effect on

Plaintiff, or emboldened rather than deterred him, then Plaintiff will not prevail on his First

Amendment retaliation claim.  It is a question of fact, however, whether Benepe's conduct

chilled Plaintiff's expression.  The Amended Complaint alleges that Plaintiff "curtailed his

expression" because he feared future arrest.  (Am. Cmplt. ¶ 33)  Accepting that allegation as true,

Plaintiff has sufficiently pled a colorable First Amendment retaliation claim.  The City

Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim will be denied.

###   2.  Plaintiff Has Not Stated a Fourth Amendment Claim Against the City Defendants

   Plaintiff has asserted a Section 1983 false arrest claim against all Defendants.  A

Section 1983 false arrest claim is "substantially the same as a claim for false arrest under New

York law."  Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999) (quoting Weyant

v. Okst, 101 F.3d 845, 852 (2d Cir.1996)).  To plead a prima facie false arrest claim, a plaintiff

must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was

conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the

confinement was not otherwise privileged." Bernard v. United States, 25 F.3d 98, 102 (2d Cir.

1994). "An arrest of a criminal suspect by a law enforcement officer with probable cause is a

'privileged' confinement even if it is non-consensual." Biswas v. City of New York, 12 CIV.

3607 JGK, 2013 WL 5421678, at *4 (S.D.N.Y. Sept. 30, 2013) (citing Decker v. Campus, 981 F.

Supp. 851, 856 (S.D.N.Y. 1997); Breitbard v. Mitchell, 390 F. Supp. 2d 237, 245 (E.D.N.Y.

2005)). Thus, "[u]nder New York law, the existence of probable cause is an absolute defense to

a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (citing Weyant, 101 F.3d

at 852).

> "An officer has probable cause to arrest when he or she has 'knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is

committing a crime.'" Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (quoting Weyant, 101

F.3d at 852). "[T]he determination of probable cause is an objective one, to be made without

regard to the individual officer's subjective motives or belief as to the existence of probable

cause." United States v. $557,933.89, More or Less, in United States Funds, 287 F.3d 66, 85 (2d

Cir. 2002).

> The City Defendants argue that Plaintiff's Fourth Amendment claim is

insufficient as a matter of law because (1) officers had probable cause to arrest Plaintiff; and (2)

Plaintiff has not pled facts demonstrating Benepe's personal involvement in the arrest. The City

Defendants are correct on both counts.

### (a)    The NYPD Had Probable Cause to Arrest Plaintiff

> Plaintiff was charged with trespassing and disorderly conduct. Under New York

Penal Law § 240.20(4), "[a] person is guilty of disorderly conduct when, with intent to cause

public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [w]ithout

lawful authority, he disturbs any lawful assembly or meeting of persons."

> The Amended Complaint alleges that Dr. Henry told police officers that she had
>
> observed [Plaintiff] scream and yell in sum and substance:  Bloomberg is a Liar,
> Bloomberg Sucks, Fuck Bloomberg;" that Lederman had no lawful authority to be
> there; that she asked Lederman to leave and he refused; [and] that he did not have
> permission or authority to remain inside the Museum.

(Id. ¶ 29)  Accepting the allegations of the Amended Complaint as true, it is abundantly clear

that the NYPD had probable cause to arrest Plaintiff for disorderly conduct.  The fact that

Plaintiff alleges that all of Dr. Henry's statements to the police were false (see Pltf. Opp. Br.

(Dkt. No. 22) at 5) does not change the analysis unless the officers knew that her statements were

false.  "When information is received from a putative victim or an eyewitness, probable cause

exists, unless the circumstances raise doubt as to the person's veracity."  Curley, 268 F.3d at 69-

70 (internal citations omitted).  There is no such allegation in the Amended Complaint.  See

Guthrie v. US Gov't, 11 CIV. 211 PKC, 2011 WL 832251, at *3 (S.D.N.Y. Mar. 2, 2011)

("Plaintiff makes no allegation that the arresting officer knew, or had reason to know, that the

accusations of the complaining witness were false and therefore fails sufficiently to allege that

the officer did not have probable cause to arrest him.").  Accordingly, Plaintiff's false arrest

claim against the City Defendants will be dismissed because police officers had probable cause

to arrest him.

> **(b)     The Amended Complaint Does Not
>            Allege Dr. Benepe's Personal Involvement**

> Plaintiff's false arrest claim against the City Defendants also fails because

Plaintiff has not alleged facts demonstrating that Benepe was personally involved in Plaintiff's

arrest.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1993). "'[D]irect participation' as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001).

Here, the sole factual allegation against Benepe in connection with Plaintiff's Fourth Amendment claim is that he threatened Plaintiff with arrest. (Am. Cmplt. ¶ 23)  As discussed above, however, Plaintiff alleges that it was Dr. Henry who provided the information to the police that led to his arrest. See, e.g., Am. Cmplt. ¶¶ 29, 65.  Because there is no allegation that Benepe supplied information to the police or that he asked the police to arrest Plaintiff, or that he encouraged Dr. Henry to do so, there is no basis for a false arrest claim against the City Defendants.

Because the Amended Complaint does not plead Benepe's personal involvement in Plaintiff's arrest, the Fourth Amendment claim must be dismissed as to him.  The Fourth Amendment claim must likewise be dismissed as against the City, because Benepe is the only municipal official charged with any wrongdoing.  See Martinez v. City of New York, 06 CIV. 5671 (WHP), 2008 WL 2566565, at * 4 (S.D.N.Y. June 27, 2008) aff'd, 340 F. App'x 700 (2d Cir. 2009) ("A municipality cannot be liable for acts by its employees which are not constitutional violations.").

### 3. Plaintiff Has Not Stated a Fourteenth Amendment Claim Against the City Defendants

To succeed in pleading a selective enforcement claim, a plaintiff must proffer sufficient factual allegations to show "(1) that [he was] treated differently from other similarly

situated individuals, and (2) that such differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Harlen Associates v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (quoting LaTrieste Rest. & Cabaret v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994)).  The comparison must be to those who are "similarly situated in all material respects."  Sharpe v. City of New York, No. 11 CIV. 5494, 2013 WL 2356063, *4 (E.D.N.Y. May 29, 2013) (internal quotation marks and citation omitted).  "The test for determining whether persons similarly situated were selectively treated is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent."  Yajure v. DiMarzo, 130 F. Supp. 568, 572 (S.D.N.Y. 2001) (citing Penlyn Dev. v. Village of Lloyd Harbor, 51 F.Supp.2d 255, 264 (E.D.N.Y. 1999) (noting that "apples should be compared to apples").

Plaintiff argues that he has adequately pled a selective enforcement claim given his allegations that (1) "[o]ther members of the audience, who jumped out of their seat, ran up to the stage, and physically accosted Lederman were not similarly charged or even approached by the police;" and (2) "[o]ther protestors who were holding up signs were not asked to put them down."  (Pltf. Opp. Br. (Dkt. No. 22) at 7)  Defendants argue that the alleged conduct of other audience members is not similar to that of Plaintiff, given that Plaintiff has not alleged that other audience members disrupted the event numerous times by interjecting their own comments. (City Def. Br. (Dkt. No. 19) at 13-14)  This Court agrees.

Plaintiff's selective enforcement claim fails because the Amended Complaint does not plead sufficient facts from which a reasonable person could infer that Plaintiff and the other audience members were similarly situated.  It is apparent from the face of the Amended

Complaint that Plaintiff was engaged in disruptive behavior.  On at least three occasions, Plaintiff interrupted the panel event to express his unsolicited views.  (Am. Cmplt. ¶¶ 16-17, 22, 23-24)  The Amended Complaint does not allege that other audience members stood up to make "announcements," or that other audience members interrupted attendees and panel members. Because the Amended Complaint does not contain sufficient factual allegations from which disparate treatment can be inferred, Plaintiff's Fourteenth Amendment claim will be dismissed.

### 4.    Plaintiff Has Stated a *Monell* Claim Against the City

With respect to Plaintiff's Section 1983 claims against the City Defendants, only his First Amendment retaliation claim remains.  While Plaintiff has not alleged sufficient facts to suggest that City policies and practices led to a deprivation of his First Amendment rights, he has sufficiently alleged that the act of a "final policy maker" caused such an injury.

"[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell, 436 U.S. at 691.

"'[T]he word "policy" generally implies a course of action consciously chosen from among various alternatives.'"  Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008) (quoting Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)).  "Policy, in the Monell sense, may of course be made by the municipality's legislative body, . . . but it also may be made

24

by a municipal official 'possess[ing] final authority to establish municipal policy with respect to the action ordered.'" Id. (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

"[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur, 475 U.S. at 480. "Where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered," municipal liability under Section 1983 attaches. Id. However, "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id. Whether an official has final policymaking authority is a matter of state law. Id.

Here, the Amended Complaint does not allege any facts in support of Plaintiff's allegation that the City or the Parks Department has a policy, practice, or custom that caused the alleged violation of Plaintiff's constitutional rights. All of the Amended Complaint's claims about the City's purported policy are conclusory. See, e.g., Am. Cmplt. ¶ 44 ("The City of New York has a historic and well known practice, policy and custom of harassing artists and others engaged in First Amendment protected activities, and violating their rights.").

With respect to Benepe's role in City government, the Amended Complaint does not allege that he is the City's "final policymaker" for purposes of the Parks Department, but that can be fairly inferred from Plaintiff's reference to him as "Parks Commissioner." (Id. ¶¶ 1, 9) The alleged constitutional violation concerns the chilling of Plaintiff's speech concerning the issue of public park privatization. Plaintiff alleges that Benepe threatened him with arrest at the Museum event, and that Benepe "ha[d] personally ordered Plaintiff's arrest at least two times before[.]" (Am. Cmplt. ¶ 46) Under Monell, the City can be held liable if Benepe used his policy-making authority to silence critics of the Parks Department, as Plaintiff alleges.

25

Accordingly, the City's motion to dismiss for failure to state a <u>Monell</u> claim is denied to the extent that Plaintiff has pleaded a First Amendment retaliation claim.

### 5.     Benepe is Not Entitled to Dismissal at this Stage of the Proceedings on Qualified Immunity Grounds

Qualified immunity protects government officials "from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817–18 (1982)). The defense shields government officials from civil liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Id.</u> (quoting <u>Harlow</u>, 457 U.S. at 818).

A defendant is entitled to dismissal on qualified immunity grounds where the rights allegedly violated were not clearly established at the time of the alleged constitutional deprivation, <u>Islam v. Fischer</u>, No. 07 Civ. 3225(PKC), 2008 WL 110244, at *5–6 (S.D.N.Y. Jan. 9, 2008), or where there is no plausible factual dispute as to "'whether . . . a reasonable [government official] should have known he acted unlawfully . . . .'" <u>Id.</u> (quoting <u>Lennon</u>, 66 F.3d at 421). Where a complaint's allegations are such that "reasonable officials in defendants' positions could disagree as to whether defendants' . . . actions against plaintiff were unlawful," the defendant is entitled to judgment as a matter of law on the issue of qualified immunity. <u>Id.</u> at *4 (citing <u>Lennon</u>, 66 F.3d at 421).

Benepe's qualified immunity defense cannot be decided as a matter of law on the current record. Whether a reasonable official would have known – under the circumstances here – that his actions were unlawful depends on the type of forum at issue and the motive underlying Benepe's purported threat. It is well established, for example, that government restrictions on

26

speech must be reasonable and viewpoint-neutral – even where the action occurs in a non-public government forum.  See Hotel Employees, 311 F.3d at 546 (noting that restrictions on speech are still subject "to the requirements of reasonableness and viewpoint neutrality").  The factual record must be more fully developed before Benepe's qualified immunity defense can be resolved as a matter of law.

## CONCLUSION

For the reasons stated above, the City Defendants' motion to dismiss is granted in part, and denied in part.  The Museum Defendants' motion to dismiss is denied without prejudice.  Plaintiff is granted an additional thirty days from the date of this order to effect service on the Museum Defendants.  The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 17, 23).

Dated: New York, New York
       March 28, 2014

SO ORDERED.

Paul G. Gardephe
United States District Judge